IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

THE PRUDENTIAL INSURANCE )
COMPANY OF AMERICA, )
    Plaintiff, )
  )
v. )    Civil Action No. 4:21CV111 (RCY)
  )
JODYANN JACKSON, *et al.*, )
    Defendants. )
  )

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion to Dismiss for Failure to State a Claim (ECF No. 20), filed pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Plaintiff's Motion to Dismiss for Failure to State a Claim (ECF No. 20) and will dismiss both counts of Defendant Jodyann Jackson's Counterclaim (ECF No. 18).

**I. FACTUAL ALLEGATIONS**

The Prudential Insurance Company of America ("Prudential" or "Plaintiff") initiated this action by filing an Interpleader Complaint seeking judicial determination of the proper beneficiary of a Family Servicemember Group Life Insurance policy ("the Policy"). (Countercl. ¶ 1, ECF No. 18; *see* Compl. ¶¶ 14, 27-29, ECF No. 1.) In the event of a death of a spouse or child, the Policy would pay Defendant Jodyann Jackson ("Jodyann Jackson") a death benefit of $100,000. (Countercl. ¶ 6.)

On January 8, 2020, Jodyann Jackson's husband, Tristian Jackson ("Tristian"), died. (*Id.* ¶¶ 1, 5.) Tristian's death was ruled a homicide, and the investigation is still ongoing. (*Id.* ¶ 5.)

Jodyann Jackson has not been arrested or charged in his killing nor has she been found civilly liable for his death. (*Id.* ¶ 11.)

At the time of Tristian's death, he was legally married to Jodyann Jackson. (*Id.* ¶ 1.) Tristian and Jodyann Jackson had two children.  E.J. is the daughter of Tristian and Jodyann Jackson. (Compl. ¶ 4.)  M.F. is the daughter of Jodyann Jackson and the stepdaughter of Tristian. (*Id.* ¶ 5.)

After Tristian's death, Jodyann Jackson filed a Claim for Family Coverage Death Benefits with the Office of Servicemembers' Group Life Insurance seeking payment under the Policy. (Countercl. ¶ 9.)  Plaintiff denied the claim, citing 38 C.F.R. § 9.5(e)(1-2) ("the Slayer Statute"). (*Id.* ¶ 10.)  Under the Slayer Statue, a person who has been convicted of or found civilly liable of "intentionally and wrongfully killing the decedent" or "assisting or aiding" in the intentional and wrongful killing of the decedent cannot receive the benefits of a Servicemembers' Group Life Insurance policy. 38 C.F.R. § 9.5(e)(1-2).  The regulation also provides that if a beneficiary is barred from receiving proceeds due to the Slayer Statute, the funds are payable in the following order of precedence: (1) to the next beneficiary designated by the decedent in writing, (2) to the decedent's widow or widower, (3) to the decedent's children, (4) to the decedent's parents, (5) to the executor or administrator of the decedent's estate, and (6) to decedent's next of kin. 38 C.F.R. § 9.5(e)(4)(i).  As such, Prudential believes that there may be competing claims to the Policy's proceeds by Jodyann Jackson, E.J., M.F., and Defendant Dianna Jackson, Tristian's mother. (Compl. ¶ 21-24.)

## II. PROCEDURAL HISTORY

Plaintiff filed an Interpleader Complaint on September 2, 2021. (ECF No. 1.)  Defendant Dianna Jackson filed an Answer on October 25, 2021. (ECF No. 8.)  Defendant Jodyann Jackson

filed an Answer on January 27, 2022. (ECF No. 16.)[1]  Defendant Jodyann Jackson also filed a Crossclaim against Defendant Dianna Jackson and a Counterclaim against Plaintiff on that same day. (ECF Nos. 17-18.)

On February 11, 2022, Plaintiff filed a Motion to Dismiss for Failure to State a Claim, a Motion to Appoint Guardian *ad Litem* for the Minor Defendants, and a Motion for Interpleader Deposit of Death Benefit. (ECF Nos. 20-22.)  Plaintiff also filed a Memorandum of Support on February 11, 2022. (ECF No. 23.)  Defendant Jodyann Jackson filed a Brief in Opposition on February 24, 2022. (ECF No. 25.)  Plaintiff filed a Reply on March 1, 2022. (ECF No. 26.)

### III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted).  "[A] motion to dismiss for failure to state a claim

---

[1] Defendant Jodyann Jackson is currently acting individually and as the Mother and Next Friend of the Minors, E.J. and M.F. (ECF No. 16, at 1.)  Plaintiff has filed a Motion to Appoint Guardian *ad Litem* for the Minor Defendants. (ECF No. 21.)

3

should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

IV. DISCUSSION

### A. The Counterclaim

Defendant Jodyann Jackson's Counterclaim asserts two counts against Plaintiff. Count One seeks a declaratory judgment in which the Court would "declare Jodyann the proper beneficiary of the FSGLI death benefit." (Countercl. ¶ 25.) Count Two alleges breach of contract under a theory that Plaintiff's failure to pay Jodyann Jackson the death benefit is a breach of the Policy. (*Id.* ¶ 31.)

### B. Plaintiff's Position

Plaintiff argues that the declaratory judgment claim and breach of contract claim both arise "from the contention that Prudential should have paid Jodyann Jackson alone and simply ignored the language and impact of the slayer statue." (Mem. Supp. at 10, ECF No. 23.)[2] Plaintiff contends that failing to "interplead in a potential slayer situation leaves an insurer potentially liable for negligently paying a primary beneficiary." (*Id.* at 11.) Plaintiff argues that "[w]here the counterclaims are essentially based on the decision to bring an action for interpleader rather than choosing between the adverse claimants, they must be dismissed." (*Id.* at 12.) Since it has properly initiated this interpleader action and this motion is based on Plaintiff's decision to bring an interpleader action, the counterclaims should be dismissed. (*Id.* at 15.)

---

[2] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system, except for transcripts which will be cited using the page and line numbers as contained in the original document.

**C. Defendant's Position**

Jodyann Jackson argues that the Slayer Statute is inapplicable to this action and that there are no competing claims to the Policy, so there is no potential for double liability. (Br. Opp'n at 5, ECF No. 25.) Jodyann Jackson contends that since she has not been accused, charged, arrested, arraigned, or tried in connection with the death of her husband, the Slayer Statute does not apply. (*Id*. at 5-6.) She argues that Plaintiff cannot withhold her payment based solely on a hypothetical future scenario. (*Id*. at 9.)

**D. Discussion**

There are three primary contentions between the parties: (1) whether the Slayer Statute is relevant to this action, (2) whether there are competing claims to the Policy that justify an interpleader action, and (3) whether the existence of the interpleader action requires dismissal of the Counterclaim.

<u>1. Applicability of the Slayer Statute</u>

An insurance company may initiate interpleader proceedings, based on the potential applicability of the Slayer Statute, without a beneficiary having been formally accused of or charged with the homicide of the insured. Interpleader is the proper route for deciding competing claiming when there is a potential slayer situation. In *Overstreet v. Kentucky Central Life Insurance Co.*, the Fourth Circuit stated that "[a]n insurer faced with potential conflicting claims by a possible slayer and the insured's estate may absolve itself of excess liability by paying the proceeds into the registry of the court and filing an action in interpleader to determine the proper recipient." 950 F.2d 931, 940 (4th Cir. 1991). In *Allstate Life Insurance Co. v. Ellett*, the Court denied a motion for summary judgment premised on an argument that the defendant should receive the proceeds of a life insurance policy, as he had not been charged in the death of the insured. No.

5

2:14cv372, 2015 WL 500171, at *4 (E.D. Va. Feb. 4, 2015). The District Court for the Western District of Virginia also addressed this issue in *Hartford Life & Accident Insurance Co. v. King*. In that case, the insurance company was initially informed that the beneficiary was a suspect and months later was informed that beneficiary had not been ruled out, but the investigation was still ongoing. *Hartford Life & Accident Ins. Co. v. King*, No 7:11cv411, 2012 WL 5472036, at *1 (W.D. Va. Apr. 30, 2012). The court stated that the fact that the beneficiary "ha[d] not been charged with, much less convicted of, the murder or voluntary manslaughter of [the insured]" did not preclude an interpleader action. *Id*. at *9.

Courts outside of the Fourth Circuit have routinely allowed for interpleader in situations where the primary beneficiary has not been ruled out in a murder investigation. *See, e.g., Monumental Life Ins. Co. v. Lyons-Neder*, 140 F. Supp. 2d 1265, 1268, 1274 (M.D. Ala. 2001) (noting that despite the beneficiary never having been "indicted, arrested, or accused of killing her husband," the insurance company did not breach its contract by initiating an interpleader action); *Apparisio v. Pruco Life Ins. Co.*, No 19-20823, 2019 WL 7945224, at *2-3 (S.D. Fla. Oct. 22, 2019) (holding that an insurance company's fear that it may be subject to multiple claims in the wake of a homicide is sufficient to justify an interpleader action); *N.Y. Life Ins. Co. v. Ortiz*, No. 14-745 S, 2015 WL 5793701, at *13 (D.R.I. Sept. 30, 2015) ("An insurer does not need conclusive proof that a beneficiary is a slayer to face a sufficient threat of multiple litigation to permit the filing of an interpleader; rather, it is enough that the insured died under suspicious circumstances, the investigation remains open and the primary beneficiary has not been eliminated as a suspect."); *Stonebreaker v. Pruco Life Ins. Co.*, No. 11cv871, 2011 WL 5362067, at *3 (S.D. Cal. Nov. 4, 2011) (noting that an interpleader action was appropriate where the insured's death was ruled a homicide and the beneficiary had not been ruled out as a suspect).

*Williams v. United States* is particularly similar to the instant action. The policy at issue was a Servicemembers' Group Life Insurance policy. No. 08-5081, 2009 WL 10679726, at *1 (E.D. La. Nov. 17, 2009). The insured's death was ruled a homicide and, almost two years into the investigation, the beneficiary had not been ruled out as a suspect. *Id*. The court stated that:

> Though the Court is mindful that it has been some time since the [police department] launched the murder investigation and thereby put [the primary beneficiary's] claim in legal limbo, this approach secures her funds, if she is indeed entitled to them, protects [the secondary beneficiary] if she is in fact the proper beneficiary, and protects [the insurance company] from the prospect of facing subsequent claims from [the secondary beneficiary] if it disburses the funds to [the primary beneficiary] and it is ultimately determined that she is not the proper taker.

*Id.* at *3. As such, the court granted the insurance company's request for permission to interplead the death benefit and denied the primary beneficiary's motion for summary judgment. *Id*. at 4.

While Jodyann Jackson has not been accused, arrested, charged, or tried in connection with Tristian's death, an interpleader action is still appropriate. The interpleader action will resolve the issue of whether she is prohibited from receiving the death benefit or whether she is entitled to it.

2. Competing Claims

A prerequisite for an interpleader action is that "two or more claimants must be 'adverse' to each other." *Hartford Life & Accident Ins. Co.*, 2012 WL 5472036, at *4 (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1703 (3d ed. 2001)). Jodyann Jackson argues that there are no actual or colorable claims to justify an interpleader action. (Mem. Opp'n at 7.)

Interpleader under 18 U.S.C. 1335 "confers jurisdiction on a district court so long as the claimants '*may claim* to be entitled to such money or property . . arising by virtue of any . . . policy.'" *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 248 (4th Cir. 2021) (emphasis in original) (quoting 18 U.S.C. § 1335(a)(1)). The Supreme Court has instructed that "a plaintiff need not await actual institution of independent suits" before bringing an interpleader

7

action. *California v. Texas*, 457 U.S. 164, 166 n.1 (1982); *see AmGuard Ins. Co.*, 999 F.3d at 248. Instead, the plaintiff only needs to have a "bona fide fear of adverse claims." *AmGuard Ins. Co.*, 999 F.3d at 249.

In *Hartford Life & Accident Insurance Co.*, the defendant argued that he should receive the benefit of the insurance policy, as he was the only claimant. 2012 WL 5472036, at *5. Another possible claimant, the insured's mother, had failed to respond to the interpleader action and the Court had entered default. *Id.* Despite the lack of other claimants, the Court declined to enter judgment for the remaining defendant. *Id.* The Court noted that the defendant could still be excluded from receiving the benefit by the slayer rule in which case the estate of the insured could receive the proceeds. *Id.* Ironically, in that scenario, the mother who had not responded to the interpleader would receive the benefit through the estate. *Id.*

Likewise, the defendant in *Allstate Life Insurance Co.* argued that "interpleader was not appropriate because there [were] not two legitimate adverse claimants." 2015 WL 500171, at *3. In reaching a decision, the Court noted that it had to determine "whether the [plaintiff was] *actually* threatened with double or multiple liability." *Id*. at *2 (emphasis added). The Court further noted that it could "envision a hypothetical case where the record plainly demonstrates that one of the purportedly competing claims is so clearly unsupported in fact or law that the interpleader action should fail at stage one, the record in this case does not warrant such outcome." *Id.* At that point, two individuals had submitted claims to the insurer, and the Court determined that the interpleader action was appropriate. *Id*. at *4.

Jodyann Jackson believes this is the case envisioned in *Allstate Life Insurance Co*. The Court disagrees. There are several potential claims to the Policy. Defendant Dianna Jackson has filed an Answer to the Interpleader Complaint. E.J. and M.F. are minors, under the care of Jodyann Jackson, who may also have a claim. Given that Jodyann Jackson has not been ruled out as a

8

suspect in the death of Tristian, Plaintiff has a bona fide fear of multiple litigation, and an interpleader action is an appropriate avenue in resolving the potential (and now actual) competing claims.

### 3. Nature of the Counterclaim

Both the claim for declaratory judgment and the claim for breach of contract seek a determination that Jodyann Jackson is entitled to the benefit under the Policy.

"Courts have disallowed counterclaims that essentially echo the competing claims to the interpleaded funds." *Auto-Owners Ins. Co. v. Bolden*, No. 9:16cv2961, 2017 WL 3923356, at *4 (D.S.C. Sept. 7, 2017); *see, e.g., Bremus v. Crofton Diving Corp.*, No. 2:16cv700, 2017 WL 4228008, at *3-4 (E.D. Va. Sept. 22, 2017) (dismissing a counterclaim for breach of fiduciary duty based on non-payment, as the plaintiff properly filed an interpleader action to resolve disputes over a retirement fund); *State Farm Life Ins. Co. v. Murphy*, 260 F. Supp. 3d 497, 502-03 (D.S.C. 2017) (dismissing an intentional interference with a contract claim as allowing the claim would "circumvent the very purpose of an interpleader action"); *Commerce Funding Corp. v. S. Fin. Bank*, 80 F. Supp. 2d 582, 585 (E.D. Va. 1999) ("Were the defendants in an interpleader action permitted to carry forward with counterclaims against the stakeholder based on the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated.").

The Counterclaim will be dismissed in its entirety, as the purpose of the interpleader is to resolve the disputes that form the basis of both counts of the Counterclaim.

## V. CONCLUSION

For the reasons detailed above, the Court will grant the Plaintiff's Motion to Dismiss for Failure to State a Claim (ECF No. 20) and will dismiss both counts of Defendant Jodyann Jackson's Counterclaim (ECF No. 18).

An appropriate Order shall issue.

/s/<br>
Roderick C. Young<br>
United States District Judge

Richmond, Virginia
Date: July 5, 2022